6L 521
1pi 171

JOHN GILLILAND *v.* WILLIAM CULLUM *et al.*

AND

JOHN ALLEN, Trustee, *v.* JAMES GILLILAND *et al.*

1. CHANCERY PLEADING AND PRACTICE.    *Parties.*    Persons who are neither parties nor privies to parties in interest, and who are only incidentally affected by a decree, cannot institute proceedings to impeach the decree for matters *dehors* the record.    Such a right belongs only to parties, persons who have become *quasi* parties and their privies.

Allen, Trustee, *v.* Gilliland.

2. SAME. *Order of publication. Notice.* The order of publication need not be identical with notice published, and it need not recite facts apparent from other parts of the record; but the notice, being intended to notify and inform the defendant, must contain statements sufficient for that purpose.

3. SAME. *Same. Recitals.* Recitals in judgments *pro confesso* taken at the rules, are of the same effect as if entered in the decree of the chancellor. Such a recital that "publication was made according to law," is sufficient without statement of details.

4. SAME. *Same. Collateral proceedings.* Recitals in the records of courts of superior jurisdiction cannot be contradicted in collateral proceedings. This can be done only in a suit instituted directly for that purpose by a party in interest.

5. SAME. *Successive attachments. Levy.* Between successive attachments, the one first levied has priority. This rule is not changed by section 3507 of the Code, invalidating all transfers of property after the filing of an attachment bill.

6. SAME. *Lien.* Section 4287 of the Code, which gives a lien in certain cases from the filing of the bill, does not apply to cases where an attachment at law would lie.

7. SAME. *Same. Lis pendens.* The doctrine of *lis pendens* does not apply to mere attachment bills so as to give a lien upon property sought to be attached, from the filing of the bill; but in such case a lien is acquired only from the levy of an attachment.

---

FROM SMITH.

---

Appeal from the Chancery Court at Carthage. W. G. CROWLEY, Ch.

J. J. TURNER for Allen, Trustee.

J. P. MURRAY and E. L. GARDENHIRE for Gilliland.

McFARLAND, J., delivered the opinion of the court.

On the 27th February, 1865, Wm. Cullum filed his bill in the chancery court at Carthage, Smith county, against Spencer McHenry, a non-resident of

the State, and others, claiming a large indebtedness against said McHenry, much the larger part of which was claimed to be purchase money of a large tract of land in said county, and therefore a lien thereon. The bill also prayed an attachment against the general estate of said McHenry, and particularly mentioning and describing a tract of some three thousand acres at the forks of Obed and Wolf rivers, in Overton county, which tract of land is now the subject-matter of controversy, and may, for convenience, be designated as the Overton county lands. An attachment issued to Overton county but was not levied, but an *alias* was issued and duly levied on said land on the 30th September, 1865. Various other proceedings were had, not necessary to mention, except that the cause came to a final hearing, upon answers and proof, and a decree was rendered in favor of said Cullum for $18,000—a part of which only was declared a lien on the Smith county land, leaving a large balance, to satisfy which a sale of the Overton county land was decreed.

In the meantime the creditors of Cullum had filed bills and obtained decrees appropriating a large part of the recovery to the satisfaction of their debts. The remainder of the recovery of Cullum had been settled upon his wife and children, by a decree rendered upon a bill of the wife for divorce and alimony, and John Allen appointed trustee for the wife and children. Before the decree for the sale of the Overton county lands could be executed, James Gilliland filed his bill in the same court on the 30th January,

1872, and obtained an injunction restraining the sale, and making the parties in interest in the case of Cullum defendants. The substance of the bill of Gilliland is, that he claimed to have obtained a title to the Overton county lands by virtue of a purchase at a sale decreed by the chancery court of Overton county, in a cause brought and determined therein, of Jesse Roberts against Spencer McHenry and P. M. Armstrong, and that the title thereby acquired was superior to the lien claimed to have been fixed upon said land by the levy of Cullum's attachment before referred to, and, furthermore, had obtained possession of the land under the decrees in said cause of Roberts *vs.* McHenry and Armstrong. The prayer of this bill was, that the superiority of complainant's title be declared, and that he be protected by injunction from the consequences of a sale under Cullum's decree.

The bill was demurred to, and afterwards answered and heard upon proof, including the records of the two causes, that is to say, the cause of Cullum against McHenry *et al.*, and the cause of Roberts *vs.* McHenry and Armstrong, and the result was, that the bill of Gilliland was dismissed, and thereupon he appealed to this court. But soon thereafter and before any hearing in this court, to-wit, on the 12th July, 1875, John Allen, trustee for Mrs. Cullum and her children, and others, filed another bill in the chancery court at Carthage, against Gilliland and the McHenrys, in which the proceedings in the case of Roberts *vs.* McHenry and Armstrong are attacked upon various grounds, and the court is asked to declare that Gilleland acquired

no title to the Overton county lands by virtue of his purchase under said decrees, and it was prayed that in the meantime Gilliland be enjoined from prosecuting his cause in this court. This bill was also met by demurrer, assigning various causes, but the same was overruled, the bill answered, proof taken and the cause heard. The chancellor held that Gilliland acquired no title under his purchase; that the proceedings under the bill of Roberts against McHenry and Armstrong were void and communicated no title to the purchaser. Gilliland was held liable for the rents of the land during the time he had been in possession, and he also brings this case up by appeal. The last named case should first be disposed of.

As we have seen, its object is to have the proceedings in the chancery court of Overton county, under which Gilliland claims title, that is to say, the case of Roberts vs. Spencer McHenry and Armstrong, declared void. It is claimed that said proceedings are void upon their face, but the bill sets up in addition various matters not appearing in the record of said cause, as grounds upon which, in addition to the causes that do appear, the court is asked to declare the proceedings a nullity.

Passing over, for the present, the grounds of objection that appear upon the face of the Overton county proceedings, the bill we are considering sets up the following additional grounds, to-wit:

1st. That the decrees in said cause, or part of them, were pronounced by the Hon. W. W. Goodpasture, who was related within the prohibited degrees

to P. M. Armstrong, one of the defendants in the cause.

2d. That Spencer McHenry, the other and principal defendant, who was sued as a non-resident and who did not appear and defend, was in reality at the time a citizen of the State of Mississippi, and that State not having been formally restored to the Union at that date (7th August, 1865), and Tennessee having been so restored, the enemy relation existed between the complainant and said McHenry, and the proceedings were for that reason void.

3d. That the publication assumed to have been made in the case was not in fact made. The order being to make the publication in a newspaper published at Nashville, called the "Union and American," whereas there was no such paper. The publication that was in fact made, was in a newspaper called "The Union," and furthermore, said notice did not contain all the statute requires that it should contain.

Among other grounds of demurrer to the bill, is one taking the position that the complainants therein have no right to litigate with the defendants in regard to the questions sought to be made. It will be observed that the complainants in the bill are entire strangers to the proceedings sought to be impeached; they have no direct interest therein, nor are they privies to the parties in interest; they are only to be incidentally affected because they are entitled to the benefits of a decree in another case, which they claim the right to have satisfied out of the same property

claimed to have been sold under the decree which they seek to impeach.

It seems to us manifest that this gives the complainants no rights to institute proceedings in their own name to impeach the decrees in said cause for matters *dehors* the record. Although they have the right, whenever the effect of said proceedings comes collaterally in review in any matter in which complainants are interested, to show, if they can, that the proceedings are void upon their face.

The proceedings sought to be impeached is a suit in which Jesse Rogers was complainant and Spencer McHenry and P. M. Armstrong were defendants. The right to institute new proceedings to impeach said decrees belongs alone to the parties to said cause, or those who become *quasi* parties and their privies. It is certain that the present complainants would have no right to prosecute a writ of error to reverse said decrees, or to file a bill of review, or bill to impeach the decrees for fraud, and the present bill stands in the same category. So far, therefore, as the bill sets up grounds *dehors* the former record, the demurrer should have been sustained, and the consideration of those questions will therefore be dismissed.

So far as the bill seeks to have the validity of the proceedings in question passed upon to determine whether they be valid on their face, or to determine the rights of the parties under their conflicting attachments, it may be maintained. This is for the purpose of removing clouds from the title, so that it may be determined in advance of the sale ordered in the

case of Cullum, whether or not the purchaser is to. get any title. It is true that this question might as well have been settled under the bill filed by Gilliland, in which, upon the assumption that he acquired the better title,. he sought to prevent, by injunction, any further cloud thereon—to protect his rightful possession; but inasmuch as it was optionary with him as to whether he would prosecute his cause, the present complainants, we suppose, had the right to file their bill, and possibly have the right anyway. So it is we regard the question fairly presented under both bills as to the rights of the parties under their conflicting claims; that is to say, whether Gilliland acquired the title under his purchase, or whether the lien claimed under Cullum's bill and attachment is superior. In attachment at law upon real estate, the parties are left to test the strength of titles thus acquired by action of ejectment, but in chancery, the court executes its decrees by putting the purchasers in possession, if the proper defendants are made, and it is appropriate and convenient to settle questions of title when fairly presented, without leaving the parties to institute new and expensive proceedings for the purpose. The question of title in this case is to be determined upon the face of the respective proceedings. The validity of Gilliland's title is thus to be determined.

If the proceedings in the case of Roberts are absolutely void upon their face, then the decree of the chancellor so declaring is correct, and it would be proper to remove the same as a cloud upon the title,

so that the land may sell for its value under Cullum's decree; on the other hand, if said proceedings are valid and Gilliland thereby acquired a title superior to the lien of Cullum's attachment, the sale under the latter should be enjoined. In the bill filed by Gilliland he seeks to bolster his title by the allegation that the debt for which the land was sold under Roberts' bill was for purchase money, but it was not so alleged in said bill, and Gilliland must stand alone upon said proceedings. The question, therefore, as to whether the debt was purchase money, is immaterial.

The first question, therefore, is, are the proceedings under Roberts' bill absolutely void upon their face? The bill is filed against Spencer McHenry as a "non-resident," charging with sufficient certainty a valid debt against him; that he was the equitable owner of the land in question, the legal title being in Armstrong, who was served with process. The land was attached, an order of publication made as to McHenry, and after the lapse of sufficient time a judgment *pro confesso* was entered by the master at rules, which recites that due and legal publication had been made as to McHenry. The decree was subsequently rendered, founded upon the judgment *pro confesso,* and in other respects the cause proceeded regularly to sale and confirmation thereof.

The specific objections pointed out are, first, that the fiat of the chancellor granting the attachment is dated the 8th of August, whereas the attachment was issued and levied on the 7th of August. It is, however, conceded that in such a case the clerk had the

34—VOL. 6.

power to issue an attachment, without a. fiat of a judge, and from this it must follow, that as the issuance of the attachment at the time was within the power of the clerk, that subsequent fiat of the chanchancellor. could not invalidate it. The fiat of the chancellor granted an injunction as well as an attachment, and was no doubt obtained for. the purpose of having an injunction, which was afterwards issued.

It is also objected that the bonds were not properly taken. An attachment bond was taken on the 7th of August, the day the attachment issued, in the penalty of $2,500—the fiat of the chancellor required a bond of $2,000; and of the same date an injunction and attachment bond was taken in penalty prescribed, as well as a prosecution bond. We think in all this there is nothing rendering the proceedings void.

The next objection is, that the order for publication was not as required. At the August rules, the same day the attachment was issued and levied, an order of publication was entered by the master, in which it is recited that it appeared to the master, from the bill which was sworn to, that Spencer McHenry was a non-resident, and it was ordered that publication be made for four successive weeks in the Union and American, published in Nashville, requiring said defendant to appear in the chancery court at Livingston on the 1st of February thereafter, and defend the cause.

The statute requires an order for publication to be made and entered, either upon the minutes or rule docket of the court: Code, sec. 3520. The objection

is, that the order does not contain all that the law requires that it should contain. Our cases upon this subject are, perhaps, somewhat conflicting, probably growing out of a failure to distinguish between the order of publication and the memorandum or notice to be made out by the clerk in pursuance of the order, as soon as the attachment is levied, which memorandum or notice is to be published, and which shall, according to the statute, contain certain statements: See Code, secs. 3521, 3522. The distinction between the order for publication and the memorandum or notice to be published in attachment cases, is pointed out in *Walker* v. *Cottrell*, 6 Baxt., 257.

The statute does not, in terms, require that the order for publication shall show that it is made after the attachment is levied, or in fact it may be made before, in which case it shall order the publication to be made when the attachment is levied: Code, sec. 3518. Nor does the statute specify *what* the order shall contain. As the order itself is not necessarily the notice to be published, but constitutes simply part of the record of the cause, there can be no good reason for holding that *it* shall contain recitals of facts that do sufficiently appear from other parts of the record, as, for instance, that the defendant's property had been attached. This fact does appear from the attachment and levy, and so of all the other matters appearing from the record. The notice to be published is a wholly different matter, is intended to give notice to the defendant, and is required to contain statements sufficient for that purpose.

Allen, Trustee, v. Gilliland.

The apparent conflict between our cases may, to some extent, be obviated by observing the different manner in which the question in the several cases has arisen; that is to say, whether the cases came up by direct appeal or writ of error, or by a new proceeding instituted for the purpose of impeaching the former proceedings, or whether the attack be purely collateral, as in this case.

It no doubt often happens that the notice published is simply a copy of the order, and so some of our cases speak of the notice and order as identical.

The provisions of the Code, secs. 4354 to 4359 inclusive, in relation to practice in chancery, seem to be entirely different from the provisions in relation to attachment proceedings; but if these provisions be applicable, the order in this case would be sufficient, as it contains all that is required by those provisions.

We hold that the order for publication in this case is sufficient.

The next question is, whether the record contains sufficient evidence to show that the publication was in fact made. For this we have a judgment *pro-confesso*, taken and entered by the master on his rule docket at the March rules, 1866, in which it is recited that it appeared that "publication had been made according to law," requiring Spencer McHenry to appear and defend on the first Monday in February, and that he had failed to do so. The decree contains no recitals as to publication, but refers to the judgment *pro confesso*. It has been held the proper practice to move for judgment *pro confesso* before the master

at rules, and that it is not essential that the *pro confesso* shall be taken before the chancellor in open court; and from this it must result, that if taken before the master, the recitals will be equally as effective as if entered in the decree of the chancellor.

It is insisted, however, that the recital of "publication according to law" is not sufficient—that it is the recital of a mere conclusion of law; that it ought to recite the facts, that is to say, how long and in what manner the publication had been made.

We are of opinion, however, that the recital of "publication according to law" is sufficient in a court of superior jurisdiction. All presumptions are made in favor of the correctness of their proceedings. Error will not be presumed, but must affirmatively appear: *Walker* v. *Cottrell*, 6 Baxt., 274; *Kilcrease* v. *Blythe*, 6 Hum., 378; *Gilchrist* v. *Cannon*, 1 Cold., 582; 7 Cold., 555. The recital that publication according to law was duly made, will be taken as conclusive of the fact, unless it is contradicted by something in the record. The weight of authority on the question with us is, that the record cannot, when collaterally attacked, be contradicted by the proof to show that the publication was not in fact made. This was directly held in *Walker* v. *Cottrel*, 6 Baxt., before referred to, and although there are other cases where language is used which might imply a different view, yet we think these cases were not intended to hold a different doctrine. It has been held that the question may be made by a bill directly for the purpose by the party in interest. It was so held in the case of *Walker*

v. *Day, Greswell & Co.*, involving the same matter in controversy in the case of *Walker* v. *Cottrell;* see also *Baines* v. *Perry,* 1 Lea, 37. It is unnecessary to enter into any discussion of the principles upon which these cases rest. It is sufficient to say that it has not been held, and we think cannot be, that a stranger to the proceedings may make the question by a new bill; and, therefore, the evidence on the subject of publication brought forward under the bill of John Allen, trustee, cannot be looked to.

Other objections have been taken, but we are of opinion that no sufficient reason has been discovered for declaring the proceeding in the case of Roberts void upon its face. Looking alone to the record in the case, it must be held that Gilliland acquired title to the land, unless the proceedings in the case of Cullum fixed upon it a superior lien. As we have seen, Cullum's bill was first filed, and described the land in controversy, and prayed that the same be attached, but Roberts's attachment was in fact first levied. The general rule is, that, as between successive attachments, the one first levied has priority. This is not changed by sec. 3507 of the Code, which invalidates all transfers of property after the filing of an attachment bill or suing out an attachment at law, when the property is described in the bill or attachment. This relates only to transfers of the property; as between successive attachments, the priority depends upon the actual levy, as was decided in the unreported case of *The Bank* v. *Mitchell,* cited by King in his new Digest, vol. 1, sec. 380, sub-sec. 21. No transfer hav-

ing been made in this case, sec. 3507 does not apply, and the first levy must prevail.

It is true, under other constructions of this section, cases may arise between successive attachments and assignees involving awkward dilemmas, but they need not now be considered. Nor can complainant have any assistance from sec. 4287 of the Code, which gives a lien in certain cases from the filing of the bill. It is sufficient to say, that the section does not by its terms apply to cases where an attachment at law would lie, and the bill of Cullum as to the land in question was equivalent simply to an attachment at law.

It is argued that Cullum's bill seeking to attach the land, had the effect of a *lis pendens*, and, being duly prosecuted, no one else could acquire any superior right thereafter; but we are of opinion that this doctrine does not apply to mere attachment bills so as to give a lien upon the property sought to be attached from the filing of the bill, but in such cases a lien only is acquired from the levy of an attachment.

Upon the whole case, therefore, we direct that the decree of the chancellor be reversed, and a decree entered for Gilliland, but, under the circumstances, each party will pay his own costs.